# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| GENCOR INDUSTRIES, INC. RETIREMENT SAVINGS PLAN, | |
| Plaintiff, | No. C06-2038 |
| vs. | REPORT AND RECOMMENDATION |
| LEONARD A. ZWEIBOHMER, SHAWN ZWEIBOHMER, KIM ZWEIBOHMER, and AMY KLIMESH, | |
| Defendants. | |

_____

This matter comes before the court pursuant to plaintiff's October 3, 2006 motion for preliminary injunction (docket number 13). The motion for a preliminary injunction was referred to the undersigned United States Magistrate Judge for the issuance of a report and recommendation (docket number 15). None of the facts material to this motion are in dispute. The court heard oral argument on this motion on November 15, 2006, at which the plaintiff was represented by attorney Robert Hatala and the defendants were represented by attorney Mark Zaiger. It is recommended that plaintiff's motion for a preliminary injunction be granted.

## I. FINDINGS OF FACT

On June 18, 1999, Randall Zweibohmer designated his father, defendant Leonard Zweibohmer, as the beneficiary of death benefits under his Gencor Industries, Inc. 401K Retirement Savings Plan ("Plan"). On July 5, 2002, Randall Zweibohmer married Deann Hasbrouck. They remained married until Randall Zweibohmer's death on January 15, 2006. Randall Zweibohmer's spouse never gave written consent to his prior designation as his father as the beneficiary of his Plan benefits. On or about February 13, 2006, the

Plan distributed a total of $91,502.46 to Leonard Zweibohmer as follows: $22,875.62 in federal withholding, held by the Plan; $9,150.25 in state withholding, held by the plan; and $59,476.59 paid directly to Leonard Zweibohmer. The Plan distributed the benefits pursuant to the mistaken belief that Leonard Zweibohmer was entitled to the benefits and without awareness that Randall Zweibohmer had a surviving spouse.

Leonard Zweibohmer distributed $43,956.90 of the $59,476.59 he received. Part of the money covered Randall Zweibohmer's funeral and burial expenses. Part of the money was paid to Randall Zweibohmer's siblings. Leonard Zweibohmer currently holds $15,519.69 of the benefits.

## II. CONCLUSIONS OF LAW
### A. PRELIMINARY INJUNCTIONS

Applications for preliminary injunctions generally are measured against the standards set forth in Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109 (8th Cir. 1981) (en banc). See Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 368 (8th Cir. 1991) (noting that the district court "considered the [Dataphase] factors governing preliminary relief in the Eighth Circuit" when ruling on the request for a preliminary injunction); S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989) (same).

The Dataphase factors include: (1) the likelihood of success on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested partes; and (4) whether the grant of a preliminary injunction is in the public interest. Dataphase Sys., Inc., 640 F.2d at 114; Medicine Shoppe, Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 803 (8th Cir. 2003) (listing Dataphase factors). No one factor is determinative; rather, in each case all of the factors must be balanced to determine if they tilt toward or away from granting a preliminary injunction. West Pub. Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222

(8th Cir. 1986). The moving party bears the burden on all four factors. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). See also Adam-Mellang v. Apartment Search, Inc., 96 F.3d 297, 299 (8th Cir. 1996) (noting that the moving party must establish a sufficient threat of irreparable harm); Baker Elec. Co-Op., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994) (noting that the party moving for preliminary injunctive relief has the burden of establishing entitlement to such relief); Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) (same).

### B. ANALYSIS OF THE DATAPHASE FACTORS

#### 1. Likelihood of Success on the Merits

In analyzing plaintiff's likelihood of success on the merits of its claims, the inquiry is not whether the plaintiff, as the moving party, will ultimately succeed, but rather must be "at least . . . sufficiently likely to support the kind of relief it requests." Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 488 (8th Cir. 1993); Glenwood Bridge, Inc., 940 F.2d at 371. Thus, a showing of likelihood of success on the merits requires only that the plaintiff find support for its position in the governing law. Baker Elec. Co-Op., Inc., 28 F.3d at 1473-74.

The parties do not dispute that an error was made in the distribution of the Plan benefits to Leonard Zweibohmer. The defendants contend that the error is such that they should not have to return the funds. Plaintiff is likely to succeed on its ERISA claim. This Dataphase factor weighs in favor of injunctive relief.

#### 2. Threat of Irreparable Harm to the Plaintiff

Irreparable harm may be established by showing that the moving party has no adequate remedy at law. Baker Elec. Co-Op., 28 F.3d at 1473; Frank B. Hall & Co. v. Alexander & Alexander, Inc., 974 F.2d 1020, 1025 (8th Cir. 1992). However, a valid monetary damage claim does not automatically preclude the issuance of injunctive relief. Moore Bus. Forms, Inc. v. Wilson, 953 F. Supp. 1056, 1062 (N. D. Iowa), aff'd, 105

3

F.3d 663 (8th Cir. 1996). In this case, the defendants may spend the money prior to entry of judgment and thereby defeat plaintiff's ability to recover.

As set forth above, the court finds that there is a reasonable likelihood of success that the plaintiff will succeed on the merits of its claim. Plaintiff will also suffer irreparable harm if an injunction does not issue. The court concludes that the "irreparable harm" factor weighs in favor of the injunction.

3. Balance of Harms

In considering this factor, the court must"balance between the harm [to the movant] and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." Pottgen v. Missouri State High Sch. Activities Ass'n, 40 F.3d 926, 929 (8th Cir. 1994).

Defendants argue that they will be harmed by an injunction in that they otherwise lack the resources necessary to defend this lawsuit. Defendants argue that they have a colorable ERISA counterclaim. While not unsympathetic to the defendants' position, they cannot use plaintiff's only potential remedy to fund their chance at the counterclaim. Preserving the remaining funds will ultimately avoid further harm to either party. This factor weighs in favor of the injunctive relief requested.

4. The Public Interest

The final Dataphase factor to be considered is whether the public interest would be served by issuance of the injunction. The court finds this factor inapplicable as the public has no interest in this matter.

C. CONCLUSION

As set forth above, the court finds that the plaintiff is likely to succeed on its claim against the defendants, and that the other Dataphase factors weigh in favor of an injunction. An injunction should issue directing the defendants to maintain all remaining benefits and not spend or distribute any such funds for any purpose whatsoever. Defendants should be further prohibited from disposing of or encumbering any assets

4

purchased with Plan funds including, but not limited to, the vehicle purchased for Kim Zweibohmer.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[1] to the Report and Recommendation within ten (10) days of the date of the Report and Recommendation, that plaintiff's motion for preliminary injunction (docket number 13) be granted as set forth above.

November 15, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[1] Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date.